CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 14, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROMAN SEBASTIAN MONZON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00270 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| RAQUEL L. HICKMAN, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Roman Sebastian Monzon, a former Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendant Raquel L. Hickman. (*See* Am. Compl. [ECF No. 15].) This matter is before the court on Hickman's motion to dismiss. (ECF No. 37). For the following reasons, the court will grant the motion.

## I. BACKGROUND

This matter stems from events that allegedly occurred while Monzon was incarcerated at the River North Correctional Center ("River North") in Independence, Virginia. (*See* Am. Compl. at 1.) Hickman is a correctional officer at River North. (*Id.*) Monzon makes the following factual allegations in his amended complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

Monzon alleges that on July 22, 2022, he attended a religious program at River North with another inmate named Alan. (Am. Compl. at 2.) Monzon further alleges that a volunteer he only knew as "Jane Doe" also attended the program. (*Id.*) Kala Sheets, a "case management counselor" at River North, supervised the program. (*Id.*)

Monzon alleges that, during the program, he, Doe, and Alan sat within arm's reach of one another while Sheets sat at a desk approximately six feet away. (*Id.*) During the program,

Doe allegedly "spoke to Sheets and referred to her by her first name[.]" (*Id.*) Monzon alleges that, even though Doe's use of Sheets' first name "violated prison security protocols, . . . Sheets did not object to Doe's actions." (*Id.*) Monzon further alleges that Doe told him and Alan that she lives in Fries, Virginia, and that she is Sheets's neighbor. (*Id.*) According to Monzon, Sheets heard this discussion "but did not object to the statements made by Doe." (*Id.*)

Then, on July 28, 2022, Monzon allegedly spoke to Sarah Etters-Hudgins, who was, "at that time[,]" the senior case management counselor at River North. (*Id.*) During this conservation, Monzon referred to the fact that Sheets and Doe were neighbors. (*Id.* at 2–3.) Etters-Hudgins then allegedly contacted Hickman "regarding the information [Monzon] provided about Sheets and Doe[.]" (*Id.* at 3.) According to Monzon, he was transferred from regular housing to the restricted housing unit ("RHU") at River North within two hours of speaking with Etters-Hudgins. (*Id.*) Monzon alleges that his transfer "was conducted pursuant to the orders of . . . Hickman." (*Id.*)

On July 29, 2022, Brian Hall, who was a "unit manager" at River North, allegedly "instituted two classification actions against" Monzon: "(1) a keep separate between [Monzon] and Sheets [] and (2) a transfer of [Monzon] to another prison." (*Id.*) According to Monzon, these classification actions were based on information provided by Hickman, which indicated that Monzon knew Sheets's home address. (*Id.*) Monzon also alleges that the classification actions were "instigated" by Hickman and later approved by Hall's supervisors. (*Id.*) Monzon claims that he "was not then, and is not now, in possession of" Sheets's home address or any of her personal information. (*Id.*) According to Monzon, he remained in the RHU at River

North for 97 days until he was transferred to the Sussex II State Prison ("Sussex") in Waverly, Virginia. (*See id.*)

Monzon alleges that Hickman ordered his placement in the RHU in retaliation for him bringing a separate lawsuit against Hickman, specifically *Monzon v. Evans*, *et al.*, No. 7:21-cv-00242 (W.D. Va.). (*Id.* at 4.) According to Monzon, "[a]bsent a retaliatory motive," Hickman would not have placed Monzon in the RHU and would not have "instigated" the classification actions that resulted in his transfer to Sussex, "which is a more dangerous prison than [River North]." (*Id.*) Monzon further alleges that Alan was "privy to the same information about Sheets and Doe but was never placed in the RHU by [Hickman], nor were any classification actions instigated by [Hickman] against him." (*Id.*) Monzon also claims that Hickman "had no credible evidence" showing that Monzon knew Sheets's home address. (*Id.*) Specifically, Monzon alleges that Hickman did not search his personal property for evidence that he "was in possession of Sheets'[s] personal information[.]" (*Id.*)

On April 15, 2023, Monzon executed his original complaint. (ECF No. 1 at 3.) On July 1, 2024, Monzon executed an amended complaint (ECF No. 15 at 6), which is his currently operative pleading. Monzon asserts a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim against Hickman. (*Id.* at 5.)

On May 21, 2026, Hickman filed the present motion to dismiss. (ECF No. 37.) Hickman argues that Monzon has failed to state a claim upon which relief can be granted. (ECF No. 38 at 4–8.) Hickman also argues that qualified immunity bars Monzon's claims. (*Id.* at 8–10.) Although Monzon was provided notice of the motion pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975) (per curiam) (ECF No. 40), he did not file a response in opposition.[1] The motion to dismiss is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[1] Indeed, Monzon has apparently abandoned this case, as he has not filed anything on the docket since August 12, 2025. (*See* ECF No. 35.)

## III. ANALYSIS

Monzon is pursuing his claims against Hickman under 42 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). Importantly, liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

As discussed, Monzon has asserted two claims against Hickman: (1) a First Amendment retaliation claim and (2) a Fourteenth Amendment equal protection claim. (*See* Am. Compl. at 5.) The court will address these claims in turn.

### A. First Amendment Retaliation Claim

Monzon claims that Hickman retaliated against him in violation of the First Amendment. (Am. Compl. at 5.) Specifically, Monzon alleges that Hickman had him placed in the RHU at River North and "instigat[ed] [Monzon's] transfer" to Sussex in retaliation for him naming her as a defendant in a separate lawsuit. (*Id.*)

To state a claim for retaliation, Monzon must allege facts supporting a reasonable inference that (1) he engaged in activity protected under the First Amendment, (2) Hickman took some action that adversely affected his First Amendment rights, and (3) a causal relationship exists between Monzon's protected activity and Hickman's challenged conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). "Claims of retaliation by prisoners must 'be

regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Hoye v. Gilmore*, 691 F. App'x 764, 765 (4th Cir. 2017) (per curiam) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Hickman concedes—and the court agrees—that Monzon has satisfied the first element of his retaliation claim, as his "filing a lawsuit against [Hickman] in 2021 was an activity protected by the First Amendment." (ECF No. 38 at 5); *see also Nealson v. Cole*, No. 7:24-cv-00799, 2026 WL 659410, at *4 (W.D. Va. Mar. 9, 2026) ("Here, it is undisputed that Nealson engaged in protected activity by filing lawsuits"). But Monzon has failed to allege facts to satisfy the third element of his retaliation claim.

As noted, Monzon alleges that Hickman retaliated again him by placing him in the RHU at River North and "instigating [his] transfer" to Sussex. (Am. Compl. at 5.) In support, Monzon alleges that, "[a]bsent a retaliatory motive," Hickman would not have taken these actions. (*Id.* at 4.) But such a "legal conclusion[] couched as [a] fact[]" does not suffice to state a plausible claim for relief. *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also id.* at 678 (noting that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Twombly*, 550 U.S. at 555)). And though Monzon is proceeding *pro se*, this "does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a [ ] claim[.]" *Agbaje v. Hargrave Mil. Acad.*, 328 F. Supp. 3d 539, 544 (W.D. Va. 2018) (quoting *Knowles v. S.C.D.C.*, No. 2:09-1921-MBS, 2010 WL 2990157, at *3 (D.S.C. July 29, 2010)).

Otherwise, the limited factual allegations in the amended complaint are insufficient to show causation. As noted, Monzon claims that Hickman retaliated against him for naming her as a defendant in a separate lawsuit, specifically *Monzon v. Evans*, *et al.*, No. 7:21-cv-00242 (W.D. Va.). (Am. Compl. at 4.) Upon review of the docket in that case, Hickman executed a waiver of service on October 25, 2021,[2] and was therefore aware of the case from at least that date onward. (*See Monzon*, No. 7:21-cv-00242 (W.D. Va.), at ECF No. 8.) Monzon alleges that the actions of which he complains took place on or about July 28, 2022 (*see* Am. Compl. at 4), or approximately nine months after Hickman executed the waiver of service. To show a causal connection between protected activity and an adverse action, a plaintiff must show "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). But Monzon has failed to do so. *See Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017) (finding an eight-to-nine-month gap between protected activity and adverse action inconsistent with a finding of causation).[3]

[2] This fact is appropriately considered by the court, even though it is not alleged in Monzon's amended complaint. *See* Fed. R. Evid. 201(b)(2) (permitting a federal court to take judicial notice of certain facts); *see also Schneider v. Unknown Named Fed. Emps.*, No. 3:25-cv-00024, 2025 WL 2734545, at *1 (D. Alaska Sept. 25, 2025) (taking "judicial notice of the previous federal lawsuits filed by Plaintiff").

[3] Liberally construed, the amended complaint could be read to claim that Hickman's stated reason for having Monzon placed in the RHU and "instigating" his transfer to Sussex was pretextual. (*See* Am. Compl. at 4.) In support, Monzon notes that Hickman failed to punish Alan for also knowing Sheets's personal information and did not search Monzon's personal property for evidence that he possessed Sheets's personal information. (*Id.*) Monzon claims that these facts show that Hickman had a retaliatory motive. (*See id.*) But because Monzon has failed to show a *prima facie* retaliation claim, the court will not reach the issue. *See Makdessi v. Collins*, No. 7:23-cv-00049, 2024 WL 4441746, at *8–9 (W.D. Va. Oct. 8, 2024) (discussing the burden-shifting framework applicable to First Amendment retaliation claims).

Accordingly, Hickman's motion to dismiss will be granted as to Monzon's First Amendment retaliation claim.[4]

**B. Fourteenth Amendment Equal Protection Claim**

Monzon claims that Hickman violated his right to equal protection of the laws under the Fourteenth Amendment. (Am. Compl. at 5.) Specifically, Monzon alleges that Hickman did not subject Alan to adverse action even though he was "privy to the same information [about Sheets and Doe] as [Monzon]." (*See id.*)

The Fourteenth Amendment provides, in pertinent part, that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The equal protection requirement does not take from the States all power of classification, . . . but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).

To state an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated[,] and that the unequal treatment was the result of intentional or purposeful discrimination." *Kolbe v. Hogan*, 849 F.3d 114, 146 (4th Cir. 2017) (en banc) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022). The plaintiff must accordingly "allege facts which show that the defendants treated [him] differently from others with whom []he was similarly situated[.]" *Mills v. City of Roanoke*, 518 F. Supp. 2d 815, 822 (W.D. Va. 2007) (citing *Veney*, 293 F.3d at 730–31). For purposes of this

[4] Having concluded that Monzon has failed to show the third element of his retaliation claim against Hickman, the court need not—and will not—address whether Monzon can satisfy the second element.

analysis, "persons who are in all relevant respects alike are 'similarly situated.'" *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 706 (E.D.N.C. 2009) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

As an initial matter, and as Hickman notes, Monzon's "equal protection claim is simply his retaliation claim in disguise." (ECF No. 38 at 8.) Monzon essentially claims that Hickman treated him differently from Alan because Monzon filed a separate lawsuit against her. (*See* Am. Compl. at 5.) But such a claim "is, at its core, a First Amendment retaliation claim." *Martin*, 858 F.3d at 252. And "[a] pure or generic retaliation claim . . . does not implicate the Equal Protection Clause." *Id.* (quoting *Edwards*, 178 F.3d at 250).

Regardless, Monzon has also failed to allege a similarly situated comparator. As noted, Monzon claims that he was treated differently from Alan who also learned that Sheets and Doe were neighbors. (Am. Compl. at 5.) But Monzon fails to show that Alan was, "in all relevant respects[,]" like Monzon. *See Frye*, 612 F. Supp. at 706. He does not, for example, show that Alan stated to River North staff that he knew Sheets and Doe were neighbors. Nor does Monzon claim that staff reported to Hickman that Alan possessed prohibited information, or that Hickman otherwise knew that Alan possessed such information. Without more, the court cannot say that Monzon and Alan were similarly situated.

Accordingly, Hickman's motion to dismiss will be granted as to Monzon's Fourteenth Amendment equal protection claim.

## IV. CONCLUSION

For the reasons stated above, the court will grant Hickman's motion to dismiss.[5]

[5] Having concluded that the motion to dismiss will be granted on other grounds, the court need not—and will not—address Hickman's separate qualified immunity defense.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 14th day of September, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE